**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| JESS FRIEDMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:08-CV-00913 (DJS) |
| | : | |
| UNITED STATES POSTAL SERVICE | : | |
| JOHN E. POTTER, | : | |
| POSTMASTER GENERAL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF DECISION AND ORDER

The plaintiff, Jess Friedman, brings this action against

the defendant, the United States Postal Service ("USPS"),

alleging that it discriminated against him on account of his

disability in violation of the Americans with Disabilities Act

of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and the

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.  Friedman

also alleges that the USPS retaliated against him for having

participated in complaints of unlawful employment discrimination

filed with the Equal Employment Opportunity Commission ("EEOC")

in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 2000e et seq.  Jurisdiction is

invoked pursuant to 28 U.S.C. § 1331.  Now at bar is the USPS's

Motion for Summary Judgment.  For the following reasons, the

motion (dkt. # 26) is GRANTED.

1

## I. BACKGROUND[1]

The USPS has several types of letter carrier positions, two of which are relevant here — "Carrier Technician,"[2] and "Unassigned Regular."[3] These differ in two respects: First, a Carrier Technician earns approximately $1,000 more per year than an Unassigned Regular. Second, a Carrier Technician only delivers mail on one of five predetermined delivery routes which are assigned through a seniority-based bidding process, while an Unassigned Regular delivers mail on any open route chosen daily by order of seniority.

Since 1986, Freidman has worked for the USPS as a letter carrier. In 1994, he secured a Carrier Technician's assignment at the Post Office in Hamden, Connecticut ("Hamden").

In 2001, Freidman filed an unspecified complaint with the EEOC against Hamden's managers and supervisors. Prior to 2006, he also occasionally assisted other Hamden employees in filing other unspecified EEOC complaints against the USPS.

In 2002, Freidman was diagnosed with lateral epicondylitis[4] to his left elbow and underwent a series of surgical procedures. He returned to work later that year, but only to perform limited

---

[1] Unless otherwise noted, the following is drawn from the parties' submissions relating to the motion at bar.
[2] A Carrier Technician is also referred to as "City Letter Carrier, Grade Two," or as a "T-6."
[3] An Unassigned Regular is also referred to as "City Letter Carrier, Grade One."
[4] Lateral epicondylitis — colloquially known as "tennis elbow" — is a chronic degenerative joint condition.

tasks on a reduced schedule.  His limited return to work was approved by the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP"), and he was thereafter required to submit reports on his elbow condition three times per year.

In 2005, Freidman was also diagnosed with lateral epicondylitis to his right elbow.  Overall, his elbow condition appears to have affected his ability to perform certain household maintenance tasks, to play recreational sports, and to drive.  He can, however, lift objects of ten to fifteen pounds.

In 2007, the USPS inspected all of Hamden's mail delivery routes.  Consequently, one mail delivery route was eliminated. That route had been assigned to a senior letter carrier who, as a result of the elimination, was left without a job.  This senior carrier, however, also became entitled to takeover any route assigned to a carrier with less seniority.  As a result, all carriers with less seniority — including Friedman — were required to re-bid (i.e., re-apply) for their assigned routes in order to avoid potential takeover by the senior carrier. Freidman re-bid for his prior assignment, which he successfully retained.

Freidman's union and the USPS are bound by a Memorandum of Understanding which provides as follows:

> A regular letter carrier who is temporarily disabled
> will be allowed to bid for and be awarded a letter
> carrier bid assignment . . . provided that the letter

carrier will be able to assume the position within six (6) months from the time at which the bid is placed.

Management may, at the time of submission of the bid or at any time thereafter, request that the letter carrier provide medical certification indicating that the letter carrier will be able to perform the duties of the bid-for position within six (6) months of the bid. If the letter carrier fails to provide such certification, the bid shall be disallowed, and, if the assignment was awarded, it shall be reposted for bidding. Under such circumstances, the letter carrier shall not be permitted to re-bid the next posting of that assignment.

(Dkt. # 26-5, p. 91.) Pursuant to these provisions, USPS managers are entitled to issue letters — colloquially known as "Burris letters" — requesting the medical certification in question.

After the 2007 route inspection, Christopher Rogers — Hamden's manager — issued Burris letters to nine employees. Each recipient: (1) was on light or limited duty; and (2) secured or retained an assignment through the bidding process after the 2007 route inspection.[5] One of these nine Burris letters, dated May 7, 2007, was issued to Freidman. (See dkt. # 26-5, p. 98.) Freidman did not respond.

On June 14, 2007, Rogers sent Freidman a follow-up letter stating:

You received a letter dated May 7, 2007 requesting that you provide this office by May 21, 2007 with medical certification indicating you would be able to

---

[5] Rogers had previously issued Burris letters to employees meeting the same criteria subsequent to an inspection conducted in 2003 or 2004.

4

fully perform the duties of the bid-for-position within six (6) months of the bid.

You failed to provide this office with the requested information; therefore job # 6118702 will go back up for bid in the next carrier bidding cycle.

Beginning on June 30, 2007 you will be carried on the rolls as an unassigned regular. Your duty hours are 7:30 a.m. - 16:00 p.m. Your nonscheduled days will be Sunday/Wednesday.

(Dkt. # 26-5, p. 100.) In a letter dated June 15, 2007,

Freidman responded as follows:

I have approximately 21 years in the USPS. I have been on my current floating assignment since approximately 1994. I have had an approved compensation case where I have required limited duty since 2002. The postal service has accommodated my restrictions since that time. Now, because management has recently abolished route 1413 (the route of a senior carrier), I was forced to bid an assignment. As you know, I bid the same floating assignment back that I have held since 1994.

My updated medical documentation is current and dated 3/28/07. For several years, it has been an accepted practice to get updated approximately every three or four months. I, therefore, have not failed, as you state, to provide your office with requested information. Since my doctor is not going to lie or mislead by saying I would be able to fully perform the duties of the bid position, I don't know what other information you are looking for.

Since this was not a voluntary bidding, but rather mandatory, I feel there is no reason at all to take away my bid assignment. This is very upsetting to me. I feel your actions are retaliatory and discriminatory based on my physical limitations. If you do not rescind this letter, I will be forced to file a grievance and EEO Complaint, as well as seek protection under the [U.S. Merit Systems Protection Board] for my accepted and approved OWCP claim, specifying my medical restrictions.

(Dkt. # 26-5, p. 102.)

On June 30, 2007, Freidman was removed from his assignment
and his status was changed to Unassigned Regular.  Pursuant to
his union contract, however, his compensation and seniority were
not altered.

In May of 2008, Friedman successfully secured a new Carrier
Technician's assignment.  He now performs exactly the same job
as he had prior to his 2007 change of status, and does so under
the same employment terms.  The sole difference between his
prior and current assignments is that he now delivers mail on
five different routes.

On June 16, 2008 — roughly one month after he secured his
new assignment — Freidman brought this action against the USPS
alleging that his 2007 change of status caused him to suffer
damages.  The USPS now moves for summary judgment.

## II. ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure provides
that "[t]he court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  Thus, on a motion for summary judgment,
the Court must first "determine whether, as to any material
issue, a genuine factual dispute exists."  Kaytor v. Electric

Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is

"material" if it "might affect the outcome of the suit under the

governing law," and a dispute as to a material fact is "genuine"

if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at

248; Fincher v. Depository Trust and Clearing Corp., 604 F.3d

712, 720 (2d Cir. 2010).  The Court then must determine whether

the undisputed material facts, if any, entitle the movant to

judgment as a matter of law under the controlling substantive

standards.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986); Kaytor, 609 F.3d at 545.

     In making these determinations, "the court should review

all of the evidence in the record."  Reeves v. Sanderson

Plumbing Products, Inc., 530 U.S. 133, 150 (2000); Kaytor, 609

F.3d at 545.  In so doing, "the court must draw all reasonable

inferences in favor of the nonmoving party, and . . . may not

make credibility determinations[,] weigh the evidence," or

otherwise "resolve disputed questions of fact."  Reeves, 530

U.S. at 150; Kaytor, 609 F.3d at 545.

     Here, the USPS argues that it is entitled to summary

judgment because Friedman lacks Article III standing to proceed

with his claim.  (Dkt. # 26-2, pp. 14-15.)  Freidman offers no

meaningful response to this argument.

The Constitution of the United States limits the power of the federal courts to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "To state a case or controversy under Article III, a plaintiff must establish standing." Ariz. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442 (2011). In other words, the plaintiff must show "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009) (quotation marks and citation omitted).

To establish standing, a plaintiff must show the existence of three elements: injury in fact, causation, and redressability. Camreta v. Greene, 131 S. Ct. 2020, 2028 (2011) ("The party invoking the Court's authority . . . must show that he has suffered an injury in fact that is caused by the conduct complained of and that will be redressed by a favorable decision." (quotation marks omitted)); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (defining these requirements as the "irreducible constitutional minimum of standing"). Injury in fact exists where there is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Winn, 131 S. Ct. at 1442 (quotation marks and citation omitted). Causation exists where the injury is "fairly

traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. Redressability exists where it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id.

The plaintiff "bears the burden of showing that he has standing for each type of relief sought," Summers, 129 S. Ct. at 1149, and so "not only at the outset of litigation, but throughout its course," Camreta, 131 S. Ct. at 2028. To satisfy his burden, the plaintiff must establish each element of standing "in the same way as any other matter on which [he] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Bennett v. Spear, 520 U.S. 154, 167-68 (1997); Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011). Thus, to establish standing at the summary judgment stage, "the plaintiff can no longer rest on [general factual allegations of injury resulting from the defendant's conduct], but must 'set forth' by affidavit or other evidence 'specific facts' which for purposes of the summary judgment motion will be taken to be true." Lujan, 504 U.S. at 560 (quoting Fed. R. Civ. P. 56); Cacchillo, 638 F.3d at 404.

Here, Friedman has taken no depositions, has conducted no written discovery, and submits no evidence whatsoever to either

establish standing or to otherwise support his claims.  He
therefore unquestionably fails to satisfy his burden of proof
with respect to standing at this stage of the litigation.

Furthermore, having fully reviewed the record, the Court
finds no basis upon which Friedman could establish standing.
Specifically, the record casts serious doubt on Friedman's
ability to establish injury in fact because his 2007 change of
status did not affect his income, did not affect his seniority,
did not affect his ability to secure further employment with the
USPS, and did not otherwise appear to cause him any actual or
imminent economic injury.  (Dkt. # 26-5, pp. 13-14, 60-61, 65-
68.)

The lack of economic injury, however, does not alone bar
standing.  Indeed, "a party may establish standing by raising
claims of noneconomic injury." ASARCO Inc. v. Kadish, 490 U.S.
605, 616 (1989).  For instance, the Second Circuit has explained
that "emotional trauma . . . suffered as a result of an
allegedly hostile work environment" can constitute injury that
is sufficient to establish Article III standing. Leibovitz v.
New York City Transit Auth., 252 F.3d 179, 185 (2d Cir. 2001).

Here, the record shows that Friedman is "not making a claim
for psychological or emotional distress." (Dkt. # 26-5, p. 61.)
The record also reveals that Friedman felt some personal
"embarrassment" and "loss of status" as a result of his 2007

10

change of status, (dkt. # 26-5, p. 53), but that he was not

subjected to any mistreatment by his colleagues, (dkt. #26-5,

pp. 52, 79).

Setting aside the question of whether or not he actually

seeks to do so, Freidman cannot establish standing solely on the

basis of his personal sense of embarrassment and loss of status.

First, he has already secured a new Carrier Technician route

assignment, and thus, has already fully regained any "status" he

might have lost as a result of his 2007 reassignment.  Second,

his personal sense of embarrassment, without more, does not

resemble the type of "emotional trauma suffered as a result of

an allegedly hostile work environment" recognized as sufficient

in Leibovitz, and otherwise appears to fall short of the

concrete and particularized invasion of a legally protected

interest required for Article III standing.  Yet, even if

Friedman's personal sense of embarrassment somehow constitutes a

sufficient injury, there is no indication that this injury, to

the extent it still exists, can be redressed by a ruling in his

favor.  See Schlesinger v. Reservists Comm. to Stop the War, 418

U.S. 208, 221-22 (1974) ("The desire to obtain (sweeping relief)

cannot be accepted as a substitute for compliance with the

general rule that the complainant must present facts sufficient

to show that his individual need requires the remedy for which

he asks." (quotation marks and citation omitted)).  Friedman is

therefore without standing.  Accordingly, the USPS' motion must

be granted.

### III. CONCLUSION

For the foregoing reasons, the USPS's Motion for Summary

Judgment **(dkt.# 26)** is **GRANTED**.  Judgment in favor of the

defendant, the United States Postal Service, shall enter on all

claims in the complaint.  The clerk shall close this file.

SO ORDERED this 28th day of July, 2011.


_____/s/DJS_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**